UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHRISTIAN,

      Plaintiff,

v.

NCO FINANCIAL SYSTEMS, INC.,

      Defendant.

_____/

**Complaint**

**I.  Introduction**

1.  This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.  Jurisdiction**

2.  This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.  Parties**

3.  Plaintiff Michael Christian is an adult, natural person residing in Kent County, Michigan. Mr. Christian is a "consumer" and "person" as the terms are defined and used in the

1

FDCPA. Mr. Christian is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

4. Defendant NCO Financial Systems, Inc. ("NCO") is a Pennsylvania corporation doing business at 507 Prudential Road, Horsham, Pennsylvania 19044. NCO is qualified to do business in Michigan. The registered agent for NCO is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. NCO uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NCO regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NCO is a "debt collector" as the term is defined and used in the FDCPA. NCO is a "regulated person" as the term is defined and used in the MCPA. NCO is licensed by the State of Michigan to collect consumer debts in Michigan. NCO is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

**IV.   Facts**

5. Mr. Christian had a credit account (No. 1000112797476) with SunTrust Bank which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC.

6. SunTrust Bank hired NCO to collect the alleged debt from Mr. Christian.

7. Alternatively, NCO purchased the alleged debt after the related account allegedly was in default.

8. Mr. Christian disputes the alleged debt.

9. Mr. Christian refuses to pay the alleged debt.

2

10. In or about May or June of 2012, NCO used an automated dialing system to place multiple telephone calls to a telephone number belonging to Mr. Christian's sister and used a pre-recorded and/or computer generated voice to leave the following message on a telephone answering machine used by Mr. Christian's sister and mother: "This is an important message from NCO Financial System, a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please return the call to Carolyn Wright at 877-268-4294. Again, that's Carolyn Wright at 877-268-4294. Thank you. NCO Financial Systems is a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. When calling, please refer to your ID Code: 4H3RZA."

11. NCO placed the described telephone calls to the telephone number belonging to Mr. Christian's sister and left the described messages on the telephone answering machine used by Mr. Christian's sister and mother for the purpose of attempting to collect an alleged debt from Mr. Christian.

12. The only reason NCO placed the described telephone calls to the telephone number belonging to Mr. Christian's sister and left the described messages on the telephone answering machine used by Mr. Christian's sister and mother was in connection with efforts by NCO to collect an alleged debt from Mr. Christian.

13. Mr. Christian's mother heard the messages left by NCO on the telephone answering machine shared by Mr. Christian's sister and mother.

14. On or about June 13, 2012, Mr. Christian's mother responded to the messages left by NCO on the telephone answering machine she shared with Mr. Christian's sister and called NCO at 877-268-4294. The telephone call was answered by a NCO employee. The NCO

3

employee stated that his name was Cornelius Perkins. Mr. Christian's mother stated that a debt collector named Carolyn Wright had left a voice message on her telephone answering machine. The NCO employee asked Mr. Christian's mother whether she was calling from the same telephone number that NCO had called. Mr. Christian's mother answered the question in the affirmative. The NCO employee then stated, "We were actually trying to reach a Michael Christian. You know who that is?" Mr. Christian's mother replied: "That's my son." The NCO employee asked whether Mr. Christian was available. Mr. Christian's mother replied that he was not. The NCO employee stated that he wanted to leave a message for Mr. Christian regarding a personal business matter. Mr. Christian's mother stated that Mr. Christian did not reside with her. The NCO employee stated that he would remove Mr. Christian's mother's telephone number.

15. Mr. Christian's mother communicated to Mr. Christian that NCO had left a message on the telephone answering machine she shared with Mr. Christian's sister, stating that NCO was a debt collection company, that NCO was calling to collect a debt and that any information obtained would be used for that purpose, and that NCO had instructed the recipient of the message to call NCO at 877-268-4294 regarding ID Code 4H3RZA. Mr. Christian's mother communicated to Mr. Christian that when she placed a telephone call to NCO and stated that she was responding to a message left by a NCO debt collector named Carolyn Wright, the NCO employee stated that Michael Christian was the person the NCO debt collector was attempting to contact.

16. NCO communicated to Mr. Christian's mother that NCO was attempting to collect a debt from Mr. Christian.

4

17. NCO communicated information regarding the alleged debt directly and indirectly to Mr. Christian.

18. NCO communicated information regarding the alleged debt directly and indirectly to Mr. Christian's mother.

19. At no time during May or June of 2012 did Mr. Christian reside with his sister or his mother.

20. NCO did not obtain the prior consent of Mr. Christian to communicate with Mr. Christian's mother in connection with the collection of the alleged debt.

21. NCO did not obtain the prior consent of Mr. Christian to communicate to Mr. Christian's mother that NCO was attempting to collect a debt from Mr. Christian.

22. Mr. Christian has never given NCO permission to speak with Mr. Christian's mother regarding the alleged debt.

23. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

24. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

25. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

26. The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer

shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

27. NCO disclosed the name of its company in the message NCO delivered to Mr. Christian's mother, without an express request for such information by Mr. Christian's mother, violating the FDCPA.

28. Nothing in the law entitled NCO to use an automated dialing system to place a telephone call to a telephone number belonging to Mr. Christian's sister and use a pre-recorded and/or computer generated voice to leave a message for Mr. Christian on a telephone answering machine shared by Mr. Christian's sister and mother, without regard to whether the message might by heard by someone other than Mr. Christian.

29. NCO could have used other methods to communicate with Mr. Christian.

30. NCO could have chosen to communicate with Mr. Christian by postal mail.

31. NCO could have chosen to communicate with Mr. Christian by speaking directly to Mr. Christian by telephone.

32. NCO could have chosen not to use an automated dialing system to place a telephone call to a telephone number and use a pre-recorded and/or computer generated voice to disclose that NCO was attempting to collect a debt from Mr. Christian.

33. NCO could have chosen to have a live person make the telephone call to Mr. Christian and then use discretion regarding whether to deliver a message for Mr. Christian. Instead, to save money and increase its profits, NCO chose to use an auto-dialer to indiscriminately place telephone calls and leave pre-recorded and/or computer generated messages on telephone answering machines, without regard for the privacy of consumers such as Mr. Christian and without regard for the requirements of the FDCPA.

34. NCO violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a voice mail, which resulted in a communication to Mr. Christian's mother that NCO was attempting to collect an alleged debt from Mr. Christian. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

35. NCO is a member of ACA International ("ACA").

36. ACA is a trade group for debt collectors. ACA has sent multiple writings to its members, including NCO, warning about the risks associated with violating the FDCPA by leaving a message on an answering machine or voice mail that could result in an unlawful disclosure to a third party that a consumer allegedly owes a debt.

37. NCO knowingly assumed the risk of violating the FDCPA by delivering a message stating that NCO was calling to collect a debt, knowing that the message might be heard by someone other than Mr. Christian.

38. It was unrealistic for NCO to assume that someone such as Mr. Christian's mother would not respond to NCO's telephone messages and thereby be told that NCO was attempting to collect a debt from Mr. Christian. In fact, it was the goal of NCO to have *someone* respond to NCO's message and turn the call so that NCO could then disclose to the caller that NCO was attempting to contact Mr. Christian to collect the alleged debt.

39. NCO failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owes a debt. Instead, NCO used a pre-recorded and/or computer generated voice to deliver messages for the consumer, knowing it was possible that the messages might be heard by someone other than the consumer, resulting in a return telephone call and subsequent, unlawful disclosure of the name of the consumer from whom NCO was attempting

to collect a debt.

40. NCO scripted and intended to speak the pre-recorded and/or computer generated words that were spoke by NCO when delivering the above-described messages that were heard by Mr. Christian's mother in connection with NCO's efforts to collect an alleged debt from Mr. Christian.

41. NCO has been sued multiple times for allegedly violating the FDCPA by using an automated dialing system to place a telephone call and using a pre-recorded and/or computer generated voice to deliver a message for a consumer in efforts to collect a debt which resulted in an unlawful disclosure to a third party that NCO was attempting to collect a debt from the consumer. Despite all of those lawsuits, NCO has made the business decision to continue to violate the law.

42. The acts and omissions of NCO and its employees done in connection with efforts to collect a debt from Mr. Christian were done intentionally and wilfully.

43. NCO and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

44. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, humiliation and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

45. Plaintiff incorporates the foregoing paragraphs by reference.

46. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692b;

   b) Defendant violated 15 U.S.C. § 1692c;

   c) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and

   d) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

   b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

   d) Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

47. Plaintiff incorporates the foregoing paragraphs by reference.

48. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

   a) Defendant violated M.C.L. § 445.252(m) by bringing to public notice that the

consumer is a debtor;

b) Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt;

c) Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d) Defendant violated M.C.L. § 445.258.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e) Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

49. Plaintiff incorporates the foregoing paragraphs by reference.

50. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the consumer is a debtor;

b) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d)      Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e)      Equitable relief pursuant to M.C.L. § 339.916(1).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: June 19, 2012

                                       /s/ Phillip C. Rogers
                                       Phillip C. Rogers (P34356)
                                       Attorney for Plaintiff
                                       40 Pearl Street, N.W., Suite 336
                                       Grand Rapids, Michigan 49503-3026
                                       (616) 776-1176
                                       ConsumerLawyer@aol.com